<u>NOT FOR PUBLICATION</u>

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

LINDA RENAVITZ,

      *Plaintiff*,

    v.

BOAR'S HEAD PROVISION CO., INC.,

      *Defendant*.

Civil Action No. 24-10155

**OPINION**

September 2, 2025

**SEMPER**, District Judge.

The current matter comes before the Court on Defendant Boar's Head Provision Co., Inc.'s ("Defendant" or "Boar's Head") partial motion to dismiss Plaintiff Linda Renavitz's First Amended Complaint (ECF 18, "FAC"). (ECF 25, "Def. Mot.") Plaintiff opposed the motion. (ECF 37, "Opp.") Defendant filed a reply. (ECF 38, "Reply.") The Court has decided this motion upon the submissions of the parties, without oral argument, pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons stated below, Defendant's partial motion to dismiss is **GRANTED**, and Count Two of the FAC is dismissed without prejudice.

## I.    <u>FACTUAL BACKGROUND AND PRODUCURAL HISTORY</u>[1]

This suit arises from the death of Plaintiff's spouse ("Decedent"), allegedly from complications caused by *Listeria monocytogenes* ("listeria") that Decedent contracted after eating

---

[1] The facts and procedural history are drawn from the FAC and documents integral to or relied upon by the FAC. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). For the purposes of a motion to dismiss, the facts drawn from the FAC are accepted as true. *See Fowler v. UMPC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

a contaminated Boar's Head liverwurst (the "Liverwurst") produced by Defendant at its production facility in Jarratt, Virginia (the "Jarratt Facility"). (*Id.*, Background ¶¶ 9, 11-15, 19-21.) On May 28, 2024, the Plaintiff and Decedent purchased the Liverwurst from a Stop & Shop in Clifton, New Jersey. (*Id.*, Background ¶¶ 10, 13.) Decedent consumed the contaminated Liverwurst from May 28, 2024, to June 1, 2024. (*Id.*, Background ¶ 13.) On June 2, 2024, Decedent became ill and shows symptoms of generalized weakness, fever, and nausea. (*Id.*, Background ¶ 14.) On the same day, Decedent was hospitalized for his illness and remained in the hospital through his death on June 5, 2024. (*Id.*, Background ¶¶ 9, 14-15.) Plaintiff alleges that Decedent's death was caused by the contaminated Liverwurst. (*Id.*, Background ¶¶ 9, 19.)

Plaintiff alleges that laboratory and diagnostic testing confirmed the presence of listeria in Decedent's blood at the time of his death. (*Id.*, Background ¶ 17.) The Centers for Disease Control and New Jersey Board of Health have both confirmed that the strand of listeria in Decedent's system at the time of his death matched the listeria detected at Defendant's Jarratt Facility. (*Id.*, Background ¶ 18.) Local and state health officials have also confirmed that the listeria in Decedent's system caused his death. (*Id.*, Background ¶ 20.)

Plaintiff further alleges that the contaminated Liverwurst produced by Defendant, and that resulted in Decedent's death, was part of a larger listeria outbreak at the Jarratt Facility (the "listeria Outbreak"). (*Id.*, Background ¶¶ 18-20, 28-31.) Prior to the listeria Outbreak, Defendant had been cited on numerous occasions for non-compliance with applicable regulatory requirements at its Jarratt Facility by the U.S. Department of Agriculture. (*Id.* ¶¶ 22-27.) On July 26, 2024, Defendant recalled deli meats manufactured in the Jarratt Facility, including liverwurst. (*Id.* ¶¶ 28-29.) On July 31, 2024, the United States Department of Agriculture suspended manufacturing at

the Jarratt Facility due to the listeria Outbreak. (*Id.* ¶¶ 30.) On September 30, 2024, Defendant announced the closure of the Jarratt Facility. (*Id.* ¶ 31.)

As of late September 2024, the listeria Outbreak linked to the Jarratt Facility had resulted in 59 hospitalizations and 10 deaths across 19 states. (*Id.* ¶ 32.) Plaintiff alleges that Defendant produced and sold the Liverwurst "in a defective condition, unreasonably dangerous to consumers," while also failing to provide "adequate warnings" of the product's dangers. (*Id.*, Count I ¶¶ 7, 12; *see also id.* ¶¶ 9-10, 14.) Plaintiff further alleges that Defendant made several affirmations on its website about the quality of its products that amounted to express warranties, which Defendant breached when it sold the contaminated Liverwurst. (*Id.*, Count II ¶¶ 2-9, 17.)

Plaintiff filed her initial Complaint on October 30, 2024. (ECF 1.) On January 28, 2025, Plaintiff filed an amended complaint. (ECF 18.) Count One of the FAC alleges that Defendant is strictly liable to Plaintiff for selling the contaminated liverwurst pursuant to the New Jersey Products Liability Act ("NJPLA"), N.J. Stat. Ann. § 2A:58C-1, *et seq*. (FAC, Count I ¶¶ 1-20.) Count Two alleges that Defendant breached express warranties in violation of N.J. Stat. Ann. § 12A:2-313.[2] (FAC, Count II ¶¶ 1-17.) Defendant moved to dismiss Count Two of the FAC on February 10, 2025 pursuant to Fed. R. Civ. P. 12(b)(6), alleging that Plaintiff failed to plead the elements of claim for breach of express warranty under New Jersey law (Def. Mot.; ECF 25-1, "Def. Br." at 1.) On February 26, 2025, Plaintiff filed an opposition to Defendant's partial motion to dismiss. (ECF 37.) Defendant filed a reply on March 10, 2025. (ECF 38.)

---

[2] Plaintiff's FAC cites to N.J. Stat. Ann. § 12A:2-315 for the breach of express warranty claim. (*See* FAC, Count II ¶ 2.) This appears to be a typo, as § 12A:2-315 is the statutory provision for implied warranty of fitness for a particular purpose, and Plaintiff's claim is for breach of express warranty. (*See* FAC, Count II ¶¶ 2-17.) In her opposition brief, Plaintiff appears to have accounted for this error by citing to N.J. Stat. Ann. § 12A:2-313 instead. (Opp. at 5.) Nonetheless, this Court briefly addresses the implied warranty of fitness for a particular purpose below. *See infra* n.3.

## II.    __LEGAL STANDARD__

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a count for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). If, after viewing the allegations in the complaint most favorably to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols.*, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

## III.  <u>ANALYSIS</u>

Defendant asserts that Count Two of the FAC fails to plead the requisite elements of a claim for breach of express warranty and accordingly asks this Court to dismiss Count Two with prejudice. (Def. Br. at 1, 5-11.) Plaintiff argues that she has pled the breach of express warranty claim "with sufficient particularity."[3] (Opp. at 4.)

In order to state a claim for an express warranty breach under § 12A:2-313,[4] a plaintiff must allege: "(1) that [the defendant] made an affirmation, promise or description about the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description." *BK Trucking Co. v. Paccar, Inc.*, No. 15-2282, 2016 WL 3566723, at *5 (D.N.J. June 30, 2016); *see also Snyder v. Farnam Cos., Inc.*, 792 F.Supp.2d 712, 721 (D.N.J. 2011). Plaintiff alleges in the FAC that the following statements on Defendant's website in May 2024 amounted to express warranties that Defendant breached when it sold contaminated Liverwurst (the "Website

---

[3] Although the FAC cite to § 12A:2-315 appears to be a typo, *see supra* n.2, the Court briefly addresses that statutory provision. § 12A:2-315 covers the implied warranty of fitness for a particular purpose. To the extent Plaintiff intended to plead a breach of § 12A:2-315, that claim fails. In order to state a claim under § 12A:2-315, a plaintiff must allege that "(1) the seller had reason to know the buyer's particular purpose; (2) the seller had reason to know that the buyer was relying on the seller's skill or judgment to furnish appropriate goods; and (3) the buyer must actually rely upon the seller's skill or judgment." *Carrington Tea Co. v. Pretium Packaging L.L.C.*, No. 22-03825, 2023 WL 2182310, at *4 (D.N.J. Feb. 23, 2023) (quoting *Pappalardo v. Combat Sports, Inc.*, 2011 WL 6756949, at *10 (D.N.J. Dec. 23, 2011)). Plaintiff must also allege that the item was defective. *Id.* (citing *Crozier v. Johnson & Johnson Consumer Cos., Inc.*, 901 F. Supp. 2d 494, 509 (D.N.J. 2012)). Here, as Defendant noted in its partial motion to dismiss, Plaintiff did not allege in the FAC that Decedent purchased the Liverwurst for a particular purpose; rather, Decedent obtained the liverwurst for ordinary, daily consumption. (*See* Def. Br. at 6 n.1; Opp. at 4.) Plaintiff's § 12A:2-315 claim would also fail because implied warranty claims are subsumed by the NJPLA. *See Hindermyer v. B. Braun Med. Inc.*, 419 F. Supp. 3d 809, 814, 817-20, 831 (D.N.J. 2019) (dismissing plaintiff's implied warranty claims where plaintiff alleged personal injuries caused by defendant's defective product and where plaintiff's complaint also included claims under the NJPLA).

[4] Express warranties by the seller are created as follows:

(a) [a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise[;] (b) [a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description[;] (c) [a]ny sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

N.J.S.A. § 12A:2-313(1)(a)-(c).

Statements"): Boar's Head "us[ed] only the finest ingredients" in its products; Boar's Head has a "commitment to quality"; and that Boar's Head is "proud of [its] craft." (FAC, Count II ¶¶ 3-8.) Plaintiff further alleges that the nutritional facts for liverwurst on Defendant's website (the "Nutritional Facts") also amounted to an express warranty that the Liverwurst product would be "free of listeria." (*Id.*, Count II ¶ 9.)

### A.  The Nutritional Facts

The Nutritional Facts do not amount to an express warranty because Plaintiff has not identified an actionable "affirmation, promise, or description" under § 12A:2–313. The Nutritional Facts identified in the FAC merely provide the nutritional breakdown of Defendant's Strassburger Brand Liverwurst. (*See* FAC, Count II ¶ 9.) While Plaintiff alleges that the nutritional facts created an express warranty "that Boar's Head [sic] product was free of listeria," the nutritional facts do not contain any affirmations about the quality of the Liverwurst or about potential listeria contamination. (*See id.*) Plaintiff has not alleged that the Nutritional Facts are inaccurate (*see generally* FAC), nor has she offered case law supporting the proposition that the *absence* of information on a nutritional label can constitute an express warranty. In other words, Plaintiff has not identified an "affirmation, promise or description" in the nutritional facts that would give rise to claim under N.J. Stat. Ann. § 12A:2–313. *Cf. Stewart v. Smart Balance, Inc.*, No. 11-6174, 2012 WL 4168584, at *11-12 (D.N.J. June 26, 2012) (denying defendant's motion to dismiss plaintiff's express warranty claim where defendant's milk product contained a "fat free" label but was not "fat free.") Insofar as the express warranty claim is premised on the Nutritional Facts, the claim fails.

**B. Basis of the Bargain**

Defendant also argues that Plaintiff has failed to state a claim under § 12A:2-313 because she has not plausibly alleged that any of the purported express warranties served as the basis of the bargain for Decedent's purchase of the Liverwurst. (Def. Br. at 6-8; Reply at 2-7.) In order to plead the basis of the bargain requirement of § 12A:2-313, a plaintiff must allege that he or she "read, heard, saw or knew of the advertisement containing the affirmation of fact or promise." *Metcalfe v. Biomet, Inc.*, No. 18-456, 2019 WL 192902, at *3 (D.N.J. Jan. 15, 2019) (quoting *Cipollone v. Liggett Grp., Inc.*, 893 F.2d 541, 567 (3d Cir. 1990), *overruled on other grounds*, 505 U.S. 504 (1992)).

Plaintiff has not pled the basis of the bargain requirement because the FAC fails to plausibly allege that Decedent read or knew of any of the purported express warranties on Defendant's website. Rather, the FAC includes conclusory assertions that Decedent "relied upon" the Website Statements and Nutritional Facts without containing any factual specificity as to Decedent's awareness. (*See* FAC Count II ¶¶ 4, 9.) Unless the Decedent saw or was otherwise aware of a purported express warranty, "a court cannot reasonably infer that the warranty formed a basis of the bargain." *Metcalfe*, 2019 WL 192902, at *4; *see also Greisberg v. Bos. Sci. Corp.*, No. 19-12646, 2021 WL 2349760, at *7 (D.N.J. June 9, 2021) (dismissing plaintiff's express warranty claim where the allegations did not "support an inference that Plaintiff read, heard, saw or knew of the advertisement containing the [express warranty] when choosing to use the [medical device]") (internal quotation marks omitted)*, aff'd,* 2022 WL 1261318 (3d Cir. Apr. 28, 2022)); *In re: Elk Cross Timbers Decking Mktg.*, No. 15-18, 2015 WL 6467730, at *29 (D.N.J. Oct. 26, 2015) (dismissing plaintiffs' express warranty claims where plaintiffs "failed to plead which, if any, representations that [they] were aware of").

7

In opposition, Plaintiff argues that since the FAC "alleged reasonable reliance on the website, he [Decedent] saw the website prior to purchasing the meat." (Opp. at 8.) However, "[a] complaint [does not] suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (2009) (internal quotation marks and citations omitted). Indeed, Plaintiff admits that she does not know whether the Decedent viewed the website before purchasing the Liverwurst. (*See* Opp. at 8 ("Unfortunately, we cannot specifically ask the decedent when he visited Boar's Head's website because Boar's Head's product caused his demise."))

Plaintiff also attempts to modify her express warranty claim in her opposition by stating that she and Decedent "relied on Boar's Head advertising, read their website, listened to their infomercials, read their literature, and relied upon it to decide to be Boar's Head customers." (*Id.* at 4-5.) But these allegations do not appear in the FAC, and this Court may not consider after-the-fact allegations in an opposition brief. *See Commw. of Pa. ex. rel Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."). Plaintiff further suggests that this Court should allow the express warranty claim to proceed to discovery so that she can conduct depositions, which would provide her the "opportunity to provide a more precise and accurate description of the exact instances of reliance." (Opp. at 8-9.) Setting aside the obvious issue of why that information would be in Defendant's, but not Plaintiff's, possession, this argument independently fails. A complaint on its face must allege "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of a claim" in order for plaintiff to plausibly plead a claim and proceed to discovery. *Lutz v. Portfolio Recovery Assocs.*, LLC, 49 F.4th 323, 328 (3d Cir. 2022) (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 556). The FAC does not do so here.

8

Accordingly, Plaintiff's FAC fails to plausibly allege that the purported express warranties on Defendant's website served as the basis of the bargain. Plaintiff has failed to establish the basis of the bargain element required by § 12A:2-313.

### C. Puffery

Defendant alternatively argues that the affirmations Plaintiff relies upon in the FAC are non-actionable puffery. (Def. Br. at 8-11; Reply at 8-10.) The Court agrees that the Website Statements are puffery.

Under § 12A:2-313(2), "an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty." "[S]tatements that are nothing more than mere puffery are not considered specific enough to create an express warranty." *Hindermyer v. B. Braun Med. Inc.*, 419 F. Supp. 3d 809, 830 (D.N.J. 2019) (quoting *Snyder*, 792 F. Supp. 2d at 721). Puffery is defined as "an exaggeration or overstatement expressed in broad, vague, and commendatory language." *Metcalfe*, 2019 WL 192902 at *5 (quoting *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 945 (3d Cir. 1993)).

Defendant's Website Statements, including its representation that it uses "only the finest ingredients," are puffery. The purported express warranties on Defendant's website amount to subjective opinions as to the general nature and quality of Defendant's products rather than affirmations of fact. *See, e.g.*, *Greisberg v. Bos. Sci. Corp.*, No. 19-12646, 2020 WL 4435409, at *6 (D.N.J. Aug. 3, 2020) (defendant's advertisements, containing generalized statements such as "trusted performance, timeless design, and established filter performance," amounted to mere puffery rather than express warranties); *Rapid Models & Prototypes, Inc. v. Innovated Sols.*, No. 14-277, 2015 WL 4914477, at *5 (D.N.J. Aug. 18, 2015) (statements that product delivers "exceptional quality" and "unmatched part quality" are puffery). Moreover, the Website

Statements relate to the overall quality of Defendant's products and do not create "a necessary comparison to . . . competitors that is testable." *Metcalfe*, 2019 WL192902, at *5 (quoting *Brucker v. State Farm Mut. Auto. Ins. Co.*, 2017 WL 7732876 at *3 (W.D. Pa. May 26, 2017)) (finding that a statement at issue did not constitute puffery where it dealt with "a particular aspect of the product . . . rather than the Device's overall quality").

For the aforementioned reasons, Plaintiff has failed to plausibly plead a breach of express warranty claim in Count Two of the FAC.

## IV.    <u>CONCLUSION</u>

For the reasons stated above, Defendant's partial motion to dismiss Count Two of Plaintiff's FAC is **GRANTED**. Count Two of the FAC is dismissed without prejudice. An appropriate order follows.

*/s/ Jamel K. Semper*

**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig:        Clerk
cc:          Leda D. Wettre, U.S.M.J.
             Parties